1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

### WESTERN DIVISION

11
12
13
14
15
16

| | | |
|---|---|---|
| GWENLYN E. JAMISON, | ) | No. SACV 06-00509 AGR |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

17

18        Plaintiff Gwenlyn E. Jamison ("Jamison") filed a Complaint on June 2, 2006.  On

19   March 20, 2007, the case was transferred to Magistrate Judge Alicia G. Rosenberg.

20   Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate

21   Judge Rosenberg on April 2 and April 4, 2007.  The parties filed a Joint Stipulation on

22   April 2, 2007 that addresses the disputed issues in the case.  The Commissioner filed

23   the certified administrative record ("AR").  The Court has taken the Joint Stipulation

24   under submission without oral argument.

25        Having reviewed the entire file, the Court affirms the decision of the

26   Commissioner.

27   ///

28   ///

**I.**

## PROCEDURAL BACKGROUND

On May 7, 2002, Jamison filed applications for Disability Insurance Benefits and Supplemental Security Income benefits.  A.R. 13.  The Commissioner denied the applications initially and upon reconsideration.  A.R. 85-97.  Jamison requested a hearing.  A.R. 98.  The Administrative Law Judge ("ALJ") conducted a hearing on April 27, 2005.[1]  A.R. 13.  On November 8, 2005, the ALJ issued a decision denying benefits.  A.R. 10-25.  The ALJ concluded that Jamison "is not disabled within the meaning of the Social Security Act."  *Id.* at 13.

Jamison filed a request for review of the ALJ decision.  A.R. 9.  On April 6, 2006, the Appeals Council denied the request for review.  A.R. 5-8.  This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  Where the evidence is

---

[1]   The ALJ granted Jamison's request for an extension of the hearing after her first attorney withdrew.  A.R. 471-73.

1   susceptible to more than one rational interpretation, the Court must defer to the decision

2   of the Commissioner.  *Moncada*, 60 F.3d at 523.

3                                          **III.**

4                          **EVALUATION OF DISABILITY**

5        "A person qualifies as disabled, and thereby eligible for such benefits, "only if his

6   physical or mental impairment or impairments are of such severity that he is not only

7   unable to do his previous work but cannot, considering his age, education, and work

8   experience, engage in any other kind of substantial gainful work which exists in the

9   national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21, 124 S. Ct. 376, 157 L. Ed. 2d

10  333 (2003).

11       At the time of the ALJ's decision, Jamison was 43 years old, which is defined in

12  the regulations as a younger individual.  A.R. 22; A.R. 479; 20 C.F.R. § 416.963.  The

13  ALJ found that Jamison has "non-insulin dependent diabetes mellitus, asthma; loss of

14  right eye vision; and history of cigarette abuse."  A.R. 21.  The ALJ found that Jamison

15  "is able to perform light work generally that does not involve exposure to concentrated

16  fumes, odors, dusts, or gases; or any requirement for peripheral vision, depth

17  perception, or fine near vision.  The claimant is precluded from crawling, kneeling,

18  climbing ladders, or balancing.  She can on occasion climb stairs, stoop and crouch."

19  A.R. 24.  Having concluded that Jamison cannot perform her past relevant work, the

20  ALJ found that Jamison "is capable of making a successful adjustment to work that

21  exists in significant numbers in the national economy."  A.R. 23.  The vocational expert

22  identified unskilled hand packager jobs, and press operator jobs.  A.R. 23-24.

23       Jamison contends that the ALJ made errors at Step Four and Step Five of the

24  sequential analysis and incorrectly determined that Jamison was not disabled.  Jamison

25  argues that the ALJ's RFC determination was not supported by substantial evidence;

26  the ALJ did not develop the record; the ALJ did not properly assess the credibility of

27  Jamison and her friend; the ALJ improperly relied on a nonexamining physician's

28

                                            3

1  opinion; and the vocational expert's testimony was not supported by substantial
2  evidence.

3        For the reasons set forth below, the Court disagrees and affirms the
4  Commissioner.

5        **A.**      <u>**ALJ's Assessment of Credibility**</u>

6        Whenever credibility is a critical factor in a decision to deny benefits, the ALJ
7  must make explicit credibility findings.  "[T]he ALJ must make a credibility determination
8  with findings sufficiently specific to permit the court to concude that the ALJ did not
9  arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th
10  Cir. 2002).  In weighing credibility, the ALJ may consider at least the following factors:
11  (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies
12  between claimant's statements and activities; (c) exaggerated complaints; and (d) an
13  unexplained failure to seek treatment.  *Id.* at 958-59.  "If the ALJ's credibility finding is
14  supported by substantial evidence in the record, we may not engage in second-
15  guessing."  *Id.* at 959; *Morgan v. Commissioner of the Social Security Administration*,
16  169 F.3d 595, 600 (9th Cir. 1999).

17        The ALJ gave specific, clear and convincing reasons for finding that Jamison's
18  "allegations regarding her limitations" were "not totally credible."  A.R. 24.  The ALJ
19  used ordinary techniques of credibility determination, supported by substantial evidence
20  in the record, to find that Jamison's subjective complaints did not establish functional
21  limitations greater than those found by the ALJ.  "[T]he repeated inconsistencies and
22  contradictions cited above lead the Administrative Law Judge to conclude that the
23  claimant's testimony and evidence, although appearing sincere, is not fully credible
24  regarding the extent, intensity, and duration of the alleged subjective pain and functional
25  limitations and restrictions."  A.R. 21 (citing SSR 96-7p).

26        The ALJ found that "[t]here is no documented medical evidence to confirm a
27  diagnosis of HIV or that she ever received any treatment for HIV."  A.R. 20.  This is

28

1  inconsistent with Jamison's claim for benefits in part on the basis of "possible HIV? Wait

2  test results" (A.R. 114) and "HIV positive test" (A.R. 135).

3       Jamison testified that she had four strokes.  A.R. 508.  The ALJ carefully

4  reviewed all treating medical records.  There are no objective medical tests to support

5  the existence of one or more strokes.  A.R. 16-18; *e.g.,* A.R. 207-28, 308, 326-31.  The

6  ALJ noted that one of Jamison's treating physicians, Dr. Huong at Saddleback Memorial

7  Medical Center, questioned whether Jamison was faking her symptoms.  A.R. 17.

8            This caregiver questioned, however, whether the claimant was

9            "faking it."  It appears that the claimant was again unable to

10            speak fluently during a conversation with Dr. Duong on the

11            date of discharge.  Nevertheless, having left the room for a

12            while, the caregiver noted on his return that the claimant was

13            talking fluently on the telephone and moved her right leg

14            normally even though she could not seem to move it much

15            while being examined.  Additionally, she was seen to walk

16            evenly when she thought she was alone.

17  *Id.;* A.R. 308.

18       The ALJ observed that, upon reviewing Dr. Duong's discharge summary, another

19  treating physician, Dr. Schwartz, stated that it was hard to assess Jamison's limitations

20  because "she may be faking symptoms."[2]  A.R. 18.  Jamison argues here that Dr.

21  Schwartz was not Jamison's treating physician.  The ALJ's description of Dr. Schwartz

22  as a "caregiver" is supported by substantial evidence.  Jamison identified Dr. Schwartz

23

24

25  _____

26      [2]   In response to a questionnaire about Jamison's limitations, Dr. Schwartz wrote:
"Hard to assess.  Pt. may be faking symptoms."  A.R. 365.  Dr. Schwartz later left a voice

27  mail for a state agency disability analyst stating left a voice mail for a disability analysis
stating that Dr. Duong's discharge summary gave him "questions/doubt about claimant's

28  genuine disability."  A.R. 368.

1   as prescribing medications for her (A.R. 170), and Dr. Schwartz produced a treating

2   record (A.R. 341-42) and referred her to Dr. Talebi (A.R. 385).

3          Given that so many of her alleged physical and mental stroke-related limitations

4   were based on self reporting, the evidence regarding her unrehearsed normal activities

5   when she thought she was alone is highly probative and supports the ALJ's finding that

6   Jamison is not totally credible.  *See Thomas*, 278 F.3d at 959; *Batson v. Commissioner*,

7   359 F.3d 1190, 1196 (9th Cir. 2004) (before examination, patient removed sweatshirt in

8   a way that indicated greater range of motion than claimed).

9          The ALJ also noted conflicting statements by Jamison as to her smoking and

10  drug use.  Jamison sometimes denied smoking (A.R. 18, 385, 423), and other times

11  admitted smoking (A.R. 15, 174, 186) or her friend admitted that Jamison occasionally

12  smoked (A.R. 18, 459).  Jamison denied drug use (A.R. 20, 423), yet Dr. Bell, a treating

13  physician, noted a history of crack cocaine abuse in February 2003 (A.R. 20, 265) and

14  Jamison tested positive for cocaine on May 3, 2004 (A.R. 20, 439).  The inconsistencies

15  in Jamison's statements constitute substantial evidence supporting the ALJ's credibility

16  finding.  *See Thomas*, 278 F.3d at 959 (inconsistent statements about smoking and

17  alcohol use); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent

18  statements about alcohol use).

19         Moreover, the inclusion of the ALJ's observations at the hearing does not render

20  the ALJ's decision improper.[3]  "At the hearing, the claimant's thoughts did not wander

21  and all questions were answered alertly and appropriately."  A.R. 19.  The ALJ may

22  properly rely on his observations that Jamison's demeanor was inconsistent with her

23  subjective allegations.  *See Thomas*, 278 F.3d at 960.

24

25  _____

26         [3]  Jamison's citations do not support her contrary argument.  In *Lewis v. Schweiker*,
    654 F.2d 631 (9th Cir. 1981), the Court stated only that the ALJ's observations at the
27  hearing were not reliable indications of her condition at the time she received the
    overpayments at issue.  *Id.* at 634 n.4.  By contrast, the ALJ's observations in this case
28  overlap with Jamison's claim for benefits.

The ALJ also gave specific and cogent reasons for finding that the testimony of Jamison's friend, Mr. Turner, was "less than persuasive."  The ALJ stated that his testimony "does not support the conclusion that the claimant is totally incapable of performing substantial gainful activities and it is mainly based on the claimant's expression of subjective symptoms instead of objective evidence of record."  A.R. 20. Although Jamison argues here that this is not true, Mr. Turner's testimony was expressly based upon what Jamison told him:  "whatever she asks me to do I do for her" (A.R. 520), "it's dark in some areas, you know, she always tell me, well, I can't see where I am, you know, she grabs onto me" (A.R. 522).  This is substantial evidence supporting the ALJ's conclusion as to Mr. Turner's testimony.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

In summary, there is substantial evidence in the record supporting the ALJ's credibility findings.

**B.    The ALJ's Residual Functional Capacity Determination Was Supported by Substantial Evidence and Free of Legal Error**

The Residual Functional Capacity (RFC) determination at Step Four measures the claimant's capacity to engage in basic work activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986).  The RFC assessment is a determination of "the most [an individual] can still do despite [his or her] limitations.  20 C.F.R. § 404.1545(a).  It is an administrative finding, not a medical opinion.  20 C.F.R. § 404.1527(e)(2).  The RFC takes into account both exertional limitations and non-exertional limitations.  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas,* 278 F.3d at 956-57 (citation omitted).

The ALJ's 13-page single-spaced decision explicitly discussed – and incorporated into Jamison's RFC assessment – the opinions of all of Jamison's treating physicians.  A.R. 15-19.  In determining Jamison's RFC, the ALJ considered "all symptoms, including pain" and "all medical opinions" that "reflect judgments about the

nature and severity of the impairments and resulting limitations" consistent with applicable regulations.  A.R. 20.  The ALJ also considered Jamison's testimony that she can lift 25 pounds comfortably.  A.R. 19, 515.  The ALJ concluded that Jamison "has the residual functional capacity to perform a significant range of light work."  A.R. 24.  The ALJ found that Jamison's impairments did not prevent her from being able to perform:

> light work generally that does not involve exposure to
> concentrated fumes, odors, dusts, or gases; or any
> requirement for peripheral vision, depth perception, or fine
> near vision.  The claimant is precluded from crawling,
> kneeling, climbing ladders, or balancing.  She can on occasion
> climb stairs, stoop and crouch.

*Id.*; 20 C.F.R. § 404.1567(b).

### 1.   The ALJ's RFC Determination Was Free of Legal Error

Jamison argues that the ALJ's determination was legally flawed because he failed to mention or consider the report of Dr. Talebi, a treating physician.  However, the ALJ expressly mentioned and summarized Dr. Talebi's report.  A.R. 18.

Jamison further argues that the ALJ did not mention various symptoms such as possible diabetic retinopathy, hypertension, headaches, and back and neck pains.  However, the ALJ did mention those symptoms.[4]  A.R. 15-19.

Jamison argues that the ALJ incorrectly applied the 12-month durational requirement.  The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[4]    Jamison claims that Dr. Matin, an examining physician, diagnosed upper extremity neuropathy.  However, Dr. Matin's report does ***not*** contain that diagnosis.  A.R. 188.  Dr. Matin stated that ***Jamison*** reported "right and left hand numbness, mainly on the right hand."  A.R. 186.  This report does not help Jamison because he found her capable of more strenuous work than the ALJ.  A.R. 188.

1  which can be expected to result in death or which has lasted or can be expected to last
2  for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

3  Jamison argues that the 12-month requirement "applies solely to disability" and,
4  therefore, the ALJ erred in holding that Jamison's urinary complaint and depression did
5  not meet the durational requirement.  As the Supreme Court stated in *Barnhart v.*
6  *Walton*, "[t]he statute adds that the 'impairment' must be one that 'has lasted or can be
7  expected to last . . . not less than 12 months.'"  535 U.S. 212, 217, 122 S. Ct. 1265, 152
8  L. Ed. 2d 330 (2002).  Jamison's argument that the 12-month requirement does not
9  apply to an impairment is directly contrary to the statute and the Supreme Court's
10  opinion, and is without merit.

11  Jamison further argues that the ALJ erred in discounting Jamison's testimony at
12  the hearing that she is incontinent of urine (A.R. 514) as "not supported by documented
13  medical evidence."  A.R. 20.  The medical records submitted by Jamison's counsel after
14  the hearing report that Jamison has no loss of bowel or bladder control.  A.R. 406; *see*
15  *also* A.R. 174, A.R. 243, A.R. 253, A.R. 385.  Jamison does not cite any medical record
16  to the contrary and the Court has located none.  *See Greger v. Barnhart*, 464 F.3d 968,
17  973 (9th Cir. 2006) (symptom not reported to doctors may be excluded from RFC).  In
18  any event, Jamison does not appear to dispute the ALJ's finding that "there is no
19  suggestion that this complaint has prevented her from working for at least 12
20  continuous months."  A.R. 20; *see Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)
21  (no evidence that bladder incontinence would have made claimant unable to work for a
22  continuous period of not less than 12 months).

23  Jamison argues that the ALJ erred in finding that "a single episode of depression
24  would not meet the durational requirements for a disability, especially when the claimant
25  suffered bereavements at that time that would naturally cause her to grieve and mourn
26  her overwhelming losses."  A.R. 20-21.  The ALJ's finding is supported by Jamison's
27  treating psychiatrist.  In an evaluation on May 15, 2003, Dr. Zaidi found her to be "alert,
28  oriented and mildly depressed."  A.R. 18; A.R. 347.  Dr. Zaidi diagnosed a "Major

9

Depressive Disorder – single episode severe with psychotic features in partial remission." A.R. 18; A.R. 347; A.R. 362. That single episode started in November 2002 according to Jamison, due to the bereavements summarized by the ALJ.[5] A.R. 20-21; A.R. 346. Although Jamison argues that she was treated for depression at Dr. Zaidi's institution through the date of the hearing, the medical records end in May 2003. A.R. 343-364.

Accordingly, the single episode did not last 12 months. The treating physicians' medical records alone constitute substantial evidence.[6] *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Although Jamison criticizes the ALJ's finding, the ALJ specifically requested at the hearing that Jamison provide any new information as to depression. A.R. 494. The medical records submitted by Jamison after the hearing do not contain any psychiatric diagnosis or treatment of depression.[7] A.R. 403.

Finally, Jamison argues that the ALJ erred in failing to assess Jamison's urinary and depression complaints in combination with other impairments. There is no error. In determining Jamison's RFC, the ALJ stated that he "considered all symptoms, including pain" and "all medical opinions" consistent with applicable regulations. A.R. 21. Moreover, in making his RFC determination, the ALJ need only take into account those

---

[5]    There appears to be one further treating record at another institution in July 2003. A.R. 380.

[6]    Jamison argues the ALJ found that the duration of the depression is "unknown." The ALJ did not make that finding. Rather, the ALJ described the testimony of the medical expert (not the treating physician). A.R. 20. The medical expert relied on the treating physician's records and therefore did not add anything to this analysis. A.R. 494-95. The medical expert testified, consistent with the treating records: "She did have a period of depression but from these records that didn't last 12 continuous months." A.R. 482.

[7]    Thus, Jamison's GAF score during a single episode of depression is not dispositive. *See Morgan*, 169 F.3d at 598 (affirming denial of benefits notwithstanding GAF score of 45-55 during a period of time). The Court notes that, at the hearing, Jamison appears to have submitted a list of medications including Prozac and Trazodone. A.R. 402. Jamison submitted no medical or treatment records to support the list.

1  limitations for which there is substantial evidence in the record.  *See Bayliss*, 427 F.3d
2  at 1217.  An ALJ may properly exclude from the RFC any allegations that he finds to be
3  unsupported by substantial evidence.  *E.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165
4  (9th Cir. 2001) (ALJ's omission of depression was supported by substantial evidence in
5  record).  An ALJ need not include subjective impairments if ALJ makes specific findings
6  that claimant is not credible.  *Thomas*, 278 F.3d at 959-60.

7  ### 2.   The ALJ's RFC Determination Was Supported by Substantial
8  ### Evidence

9  The ALJ found that Jamison's impairments are non-insulin dependent diabetes
10  mellitus, asthma, loss of right eye vision, and history of cigarette abuse.  A.R. 21, 23.
11  The ALJ noted that the certain physicians determined that Jamison was capable of
12  performing medium exertional work.  A.R. 21; *see* A.R. 185-89 (Dr. Matin), A.R. 196-
13  204 (Dr. Haaland).  However, based on the entire record, the ALJ found that Jamison
14  was capable of a significant range of light work with limitations.  A.R. 24; *see supra* at 8.

15  Jamison argues that the RFC is not supported by substantial evidence because
16  the ALJ purportedly relied exclusively on a medical expert's testimony that was
17  worthless.  Jamison's contention contradicts the record.  The ALJ recited all treatment
18  medical records.  A.R. 15-20.  The ALJ expressly stated that, in assessing Jamison's
19  RFC, he "considered all medical opinions, which are statements from acceptable
20  medical sources, which reflect judgments about the nature and severity of the
21  impairments and resulting limitations."  A.R. 21 (citations omitted).

22  Functional Vision Limitations.  The ALJ found a vision impairment and his RFC
23  takes into account that her work cannot include "any requirement for peripheral vision,
24  depth perception, or fine near vision."  A.R. 23-24.

25  The ALJ's RFC assessment as it relates to Jamison's vision impairment is
26  supported by substantial evidence.  The ALJ reviewed all medical records.  A.R. 15-16,
27  18, 20.  Dr. Matin, an examining physician, diagnosed "[p]ossible diabetic retinopathy"
28  and "[s]tatus post injury to the right eye with near blindness of the right eye."  A.R. 16,

188.  "Dr. Matin observed that the claimant was able to visually move about the office without assistance."  A.R. 16, 186.  Her visual acuity with corrective contact lenses was 20/50 with both eyes (20/200+ with the right eye alone and 20/70 with the left eye alone).  A.R. 16, 186.  Jamison had "severely restricted seeing ability, particularly with right eye damage."  A.R. 16; 188.  Dr. Matin concluded that Jamison was capable of medium exertional work.  A.R. 16, A.R. 188.  Dr. Cable, a medical expert, concluded that Jamison "might have binocular vision secondary to her right eye retinal detachment and would need to read larger print publications, navigate in familiar areas and magnify small objects for visual examination."[8]  A.R. 20.  No treating physician opined as to whether Jamison's vision precluded work.  The opinions of Dr. Matin and Dr. Cable constitute substantial evidence in support of the ALJ's decision.[9]  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of examining physician based on independent clinical findings may be substantial evidence; nonexamining physician's opinion may serve as substantial evidence when it is supported by and consistent with other medical evidence).

        Jamison argues that the treating physicians corroborate that Jamison has a serious vision impairment.  That is true.  A.R. 171, 386.  However, "the mere existence of an impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  In assessing Jamison's RFC, the ALJ determined the functional limitations associated with Jamison's vision as described in the medical records.  The

---

        [8]    Jamison notes that Dr. Haaland's RFC Assessment indicated "no work requiring precise v.a. [visual acuity] or depth perception" and no work involving right to left assembly lines or conveyor belts.  A.R. 200.  This assessment is consistent with the ALJ's RFC determination.

        [9]    Jamison argues here that Dr. Cable is not qualified to assess the impact of Jamison's visual impairment on her ability to work because he is not an ophthalmologist. Dr. Cable testified that he is qualified based on his experience and training in internal medicine and neurology, and the fact that he routinely conducts eye examinations on his patients.  A.R. 484-85.

1  medical opinions assessing Jamison's functional limitations are consistent with the

2  ALJ's RFC determination.

3      Functional Limitations Due to Asthma.  The ALJ found that Jamison suffers from

4  asthma and his RFC takes into account that her work cannot "involve exposure to

5  concentrated fumes, odors, dusts, or gases."  A.R. 23-24.

6      The ALJ's RFC assessment as it relates to Jamison's asthma is supported by

7  substantial evidence.  The ALJ reviewed all medical records as to asthma.  A.R. 15-16,

8  18-19.  Dr. Matin found that Jamison had a component of hyper-reactive airway disease

9  with a diagnosis of moderate obstructive lung disease.  A.R. 16, 185-95.  Dr. Matin

10 concluded that Jamison was capable of medium exertional work but should avoid fumes

11 and dust particles.  A.R. 16.  Dr. Cable testified that Jamison should avoid "dusts, fumes

12 and gases secondary to her moderate obstructive lung disease." A.R. 20.  The opinions

13 of Dr. Matin and Dr. Cable constitute substantial evidence in support of the ALJ's

14 decision.  *Andrews*, 53 F.3d at 1041.

15     Again, Jamison appears to argue that the medical records corroborate Jamison's

16 asthma.  While true, the existence of an impairment is not sufficient.  *Matthews*, 10 F.3d

17 at 680.  Rather, the ALJ determined the functional limitations associated with Jamison's

18 asthma.  Jamison has not cited any medical records inconsistent with the ALJ's

19 determination, and the Court has found none.

20     Light Work; Other Limitations.  The ALJ found that Jamison was able to perform

21 "light work generally."  In addition to the vision and asthma limitations described above,

22 the ALJ's RFC included some limitations on crawling, kneeling, climbing, balancing,

23 stooping and crouching.  A.R. 24.

24     The ALJ's RFC assessment is supported by substantial evidence.  The ALJ

25 reviewed all medical records.  A.R. 15-20.  Dr. Matin "concluded that the claimant was

26 capable of performing medium exertional work involving lifting/carrying up to 50 pounds

27 occasionally and up to 25 pounds frequently."  Dr. Matin further opined that "claimant

28 had no sitting restrictions and she could stand/walk for six hours during an eight-hour

1  workday." A.R. 16. Dr. Matin's opinions constitute substantial evidence in support of
2  the ALJ's decision. *Andrews*, 53 F.3d at 1041. In addition, the ALJ noted that Jamison
3  testified she is able to lift 25 pounds comfortably.[10] A.R. 19, 515.

4      Jamison argues that the ALJ's decision is wholly unsupported. Jamison alleges
5  that she lives in near total blindness (bumping into walls and stumbling over things), that
6  her depression is a 10 on a scale of 1 to 10, that she hallucinates every day and night,
7  that she has shortness of breath 75%-80% of the time, that her feet and ankles are
8  swollen, and that she is incontinent. A.R. 509, 510, 512, 514. Although Jamison
9  argues that her testimony is uncontradicted, Jamison points to nothing in the medical
10 records to support the severity of her allegations. The most recent medical records
11 submitted by Jamison after the hearing state negative for depression (A.R. 406),
12 oriented times four, alert, and speech appropriate (A.R. 407, 415), negative for
13 coughing and wheezing (A.R. 406), no evidence of edema in both lower extremities
14 (A.R. 424), and no loss of bowel or bladder control (A.R. 406). There is no mention of
15 blindness.

16     The ALJ properly assessed Jamison's credibility and determined that her
17 allegations were not totally incredible. (*See supra* at 4-7.)

18     **C.    ALJ's Development of the Record**

19     An ALJ must develop the record only if the evidence is ambiguous or "the record
20 is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276
21 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.
22 2001). This principle does not, however, allow a claimant to shift her own burden of
23 proving disability to the ALJ. *Mayes,* 276 F.3d at 459 (quoting 42 U.S.C. § 423(d)(5)

24 ───────────────

25 [10]  Jamison argues that she experiences side effects from medications. There is
26 substantial evidence in the record for the ALJ's finding that there is no credible evidence
   that the side effects prevent Jamison from working. A.R. 19; *See Osenbrock*, 240 F.3d at
27 1164 ("There were passing mentions of the side effects of Mr. Osenbrock's medication in
   some of the medical records, but there was no evidence of side effects severe enough to
28 interfere with Osenbrock's ability to work.").

("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require")).

Here, the ALJ reviewed medical records from 14 sources during a period of 3 years. A.R. 171-465. There is substantial evidence supporting the ALJ's decision. *Mayes*, 276 F.3d at 460. Where, as here, the medical record is not ambiguous or inadequate, the ALJ does not have a duty to further develop the record. *Compare Tonapetyan*, 242 F.3d at 1150 (physician found it "difficult to say" whether medical record was complete enough, stated he would "have to see more evidence" before rendering an opinion, and testified a more complete report would change his opinion).

Jamison argues that the ALJ was obligated to obtain additional medical records from the Orange County Health Care Agency. Jamison's argument misstates both the record and the legal standards. The Agency had submitted records through May 2003. A.R. 344-364. At the hearing, Jamison's counsel asked the medical expert a hypothetical question, "[w]ould a new medical record or testing help to assistant you in examining whether she still has an ongoing depression?" A.R. 494. The medical expert responded "No." *Id.* The ALJ stated, "You asked about new things that don't exist, is what you asked the doctor. If there's any new information then I need to have it." *Id.* Counsel acknowledged "the claimant's duty to produce the records." *Id.*

The ALJ left the record open for Jamison to produce any additional medical records from the Orange County Health Care Agency to the extent they existed. The ALJ thereby satisfied his duty. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). The ALJ had no obligation to recontact the Agency unless he made a finding that the Agency's medical records were ambiguous or insufficient for him to make a determination as to disability. The ALJ made no such finding here. *Bayliss*, 427 F.3d at 1217; *Thomas*, 278 F.3d at 957.

Moreover, Jamison bears the burden of showing that the new evidence is material and there is good cause for failure to incorporate the evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). The record reflects that Jamison did not

inform the ALJ that she did not receive the records from the Agency and did not request his assistance.  At the hearing, Jamison did not ask the ALJ to request any records from the Agency.  A.R. 533-34.  After the hearing, Jamison requested an extension of time to obtain Agency records due to the Agency's backlog in medical record requests.  A.R. 27.  Jamison later advised the ALJ that counsel had received the Agency's invoice for the copies and requested an additional 30-day extension after counsel sent payment to the Agency.  A.R. 26.  The ALJ left the record open for another four months, during which time there was no communication from Jamison.  The ALJ issued his decision on November 8, 2005.  A.R. 25.  Jamison's request for review from the Appeals Council on December 2, 2005 made no mention of any absent medical records and did not request any assistance in obtaining them.  A.R. 466-468.  The good cause requirement would be meaningless if a claimant could keep quiet before the ALJ and Appeals Council, and then raise the request for the first time before the district court.

Jamison also argues that the ALJ should have ordered additional tests to update the record.  The ALJ has no general duty to do so.  Given that the extensive existing medical records are not ambiguous or inadequate, the ALJ has no duty to order additional tests.  *See Mayes,* 276 F.3d at 459-60.

### D.   ALJ's Reliance on Nonexamining Physician's Opinion

Opinions of a non-examining, testifying medical expert "need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  *Andrews*, 53 F.3d at 1041.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ issued a subpoena to a medical expert to testify based on a review of medical exhibits.  A.R. 39-40.  His qualifications, experience and publications in the areas of neurology and psychiatry are set forth in his resume.  A.R. 46-48.

Jamison argues that the ALJ rejected Jamison's GAF scores and visual limitations based solely on the medical expert's opinion.  That is not an accurate description of the record.  As discussed above, the ALJ reviewed all of the medical records.  *See supra* at 7-8.  The ALJ incorporated the visual limitation in his RFC.  A.R. 24; *see supra* at 11-13.  The single episode of depression did not satisfy the durational requirement.  A.R. 20; *see supra* at 8-11.

### E.   The Vocational Expert's Testimony

The ALJ issued a subpoena to a vocational expert to testify based on testimony at the hearing and a review of exhibits.  A.R. 37-38.  Her qualifications and experience are set forth in her resume.  A.R. 41-43.

The ALJ may rely on testimony a vocational expert gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record."  *Bayliss*, 427 F.3d at 1217-18.  The ALJ is not required to include limitations that are not in his findings.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock*, 240 F.3d at 1165.

Jamison argues that the vocational expert would agree that she is disabled *if* all of her subjective limitations were taken into account.  The ALJ need not accept as true the restrictions presented in a hypothetical question propounded by claimant's counsel.  *Magallanes*, 881 F.2d at 756-57.

Finally, no remand is necessary under the recent decision in *Massachi v. Astrue*, Case No. 05-55201, 2007 U.S. App. LEXIS 11115 (9th Cir. May 11, 2007).  In *Massachi*, the Ninth Circuit concluded that the procedural requirements of SSR 00-4p require the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."  *Id.* at *10-*11.

1        The Ninth Circuit indicated, however, that remand may not be necessary if the

2   procedural error is harmless, *i.e.*, when there is no conflict or if the vocational expert

3   had provided sufficient support for her conclusion so as to justify any potential conflicts.

4   *Id.* at *11 n.19.

5        Here, Jamison has failed to identify a single conflict between the vocational

6   expert's opinion and the Dictionary of Occupational Titles.  Indeed, as the ALJ found,

7   the vocational expert testified in accordance with the DOT.  A.R. 23.  This finding is

8   supported by substantial evidence in the record.  The vocational expert expressly cited

9   the DOT in her testimony.  A.R. 523-24.  Accordingly, any error would be harmless.

10  **IV.**

11  **CONCLUSION**

12       IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

13       IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order

14  and the Judgment herein on all parties or their counsel.

15

16

17  DATED: July 9, 2007

18                     ALICIA G. ROSENBERG
                   UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28